IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**TANISHA L. MCNABB**,

    Plaintiff,

vs.

                                                        No. 13cv1048
                                                        JCH/GBW

**UNITED STATES AIR FORCE,**

    Defendant.

**MEMORANDUM OPINION AND ORDER DISMISSING COMPLAINT**

**THIS MATTER** comes before the Court on pro se Plaintiff Tanisha L. McNabb's Application to Proceed in District Court Without Prepayment of Costs and Fees, filed October 25, 2013, *see* Doc. 3 (hereinafter called "motion to proceed IFP"), and on the Court's concomitant obligation "to review the affidavit and screen her case under 28 U.S.C. §§ 1915(a) and (e)." *Lister v. Dep't of Treasury*, 408 F.3d 1309, 1311 (10th Cir. 2005). Screening the case under § 1915(e) includes determining whether "the allegation of poverty is untrue" as well as determining whether the action "is frivolous or malicious, . . . fails to state a claim on which relief may be granted; or [] seeks monetary relief against a defendant who is immune from such relief." § 1915(e). "[I]n order to succeed on a motion to proceed IFP, the movant must show a financial inability to pay the required filing fees, as well as the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised in the action." *Lister*, 408 F.3d at 1312. If the Court determines that "the allegation of poverty is untrue," or that a complaint filed without the prepayment of filing fees fails to state a claim, it must dismiss the

case. *See* § 1915(e)(2)(A), (B); *Trujillo v. Williams*, 465 F.3d 1210, 1217 n. 5 (10th Cir. 2006) (noting that dismissal of complaints under § 1915(e) is now mandatory).

### I. McNabb's allegation of poverty is untrue.

Regarding the ability-to-pay prong of the IFP analysis, IFP status should be granted only if a plaintiff demonstrates that she "cannot because of [her] poverty pay or give security for the costs . . . and still be able to provide [her]self . . . with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). McNabb, who is 25 years old and a student with no dependents, receives $2816/month in military-service-connected disability benefits. *See* Doc. 3 at 2, 5. She pays rent and utilities of $882/month. *See id.* at 3. Her medical insurance and benefits are provided by the VA. *See id.* She states that she spends approximately $350/month for food for herself, her dog, and her two cats; $80/month on taxis, and $100/month on laundry and drycleaning. *See id.* The Court notes, however, that the national-average monthly cost for food for a woman in McNabb's age group on a thrifty food plan is only around $195, *see* Official USDA Food Plans, Average for July 2013, located at http://www.cnpp.usda.gov.; that there is a public-transportation system in Albuquerque that is deeply discounted for students; and that monthly laundry and transportation expenses for an unemployed person should be minimal. McNabb also claims that she spends $250-$330/month on veterinary expenses and recreation, books, and magazines. *See id.* But those expenses clearly are not for "necessities" and will not support a claim of poverty On these facts, McNabb has failed to show that she cannot, because of poverty, provide herself with the necessities of life and pay the filing fee. *See Adkins*, 335 U.S. at 339. Her application to proceed IFP will, therefore, be denied and her Complaint must be dismissed. *See* § 1915(e)(2)(A); *Trujillo*, 465

F.3d at 1217 n. 5. As discussed below, her Complaint must be dismissed even if she were indigent.

## II. Applicable legal standards

The Tenth Circuit Court of Appeals has set forth the following standards that district courts should apply in resolving a motion to dismiss brought under rule 12(b)(6) of the Federal Rules of Civil Procedure.

> *Bell Atlantic Corp. v. Twombly* [] reject[ed] the "no set of facts" language of *Conley* [ *v. Gibson*, 355 U.S. 41, 45-46 (1957),] and announc[ed] a new (or clarified) standard: to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." --- U.S. ----, ----, 127 S. Ct. 1955, 1974, 167 L. Ed.2d 929 (2007). Under this revised standard, as we explained in *Ridge at Red Hawk, L.L.C. v. Schneider*:
>
>> the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.
>
> 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 127 S. Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

The Court applies this same standard in its review under § 1915(e)(2) to determine whether McNabb has stated a cognizable federal claim against the United States Air Force. *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). The Court will accept as true McNabb's factual allegations and construe them, and any reasonable inferences to be drawn from them, in the light most favorable to her. *See id.* But the Court "will not supply additional facts, [or]

3

construct a legal theory for [a] plaintiff that assumes facts that have not been pleaded." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989).

The courts take a two-step approach in determining whether a complaint states a claim upon which relief may be granted. First, it "identif[ies] the [conclusory] allegations in the complaint that are not entitled to the assumption of truth" and disregards them. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). Then it only "consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 681; *see id.* at 686 (rejecting the plaintiff's argument that he sufficiently stated a claim for relief by generally alleging that the defendants "discriminated against him 'on account of [his] religion, race, and/or national origin and for no legitimate penological interest,'" and stating, "[w]ere we required to accept this allegation as true, respondent's complaint would survive petitioners' motion to dismiss. But the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.") (citations omitted).

### III. Allegations in McNabb's Complaint.

McNabb's Complaint is difficult to understand because she inserts incomprehensible legalese and faulty legal conclusions into lengthy, run-on sentences. She also relies on conclusory allegations, such as claiming that an Air-Force officer "affirmed unlawful position . . . against the common laws," and "administered to and corroborated several acts of retaliatory measures." Compl. at 5. Disregarding the legalese and legal conclusions, the Court has considered the following relevant allegations and inferences.

McNabb was honorably discharged from the Air Force in 2010. Between January 2011 and March 2012, she was "employed as a federal contractor with a small business company

4

named CC&G LLC" and held a national-security clearances for the DOD and DOE.  Compl. at 3, 6.  In October, 2011, McNabb attended a Halloween party at Senior Airman Brendan Park's residence on Kirtland Air Force Base ("KAFB"), where alcohol was being served to minors and "illegal narcotic[s]" were being used.  *Id.* at 4, 6.  McNabb became intoxicated and was attempting to sleep at the house where the party was being held when she was sexually assaulted by Senior Airman Skott Cameron, who was also attending the party.  *Id.* at 4.  McNabb asserts that Cameron's assault violated McNabb's "constitutional rights" under the Violence Against Women Act[1].  *See id.*

McNabb concludes that Airman Parks also harrassed her, threatened her with physical violence, and disclosed "libelous information" in undescribed ways and at undescribed times. *Id.*  McNabb alleges that Cameron's wife (who apparently is not an Air Force employee or officer) made undescribed false claims and accusations against her at unidentified times, which allegedly violated McNabb's rights as a victim under the Violence Against Women Act, and that Cameron's wife "negligently made defamatory statements specifically identifying me in order to adversely affect my reputation and character" as a DOD contractor.  *Id.* at 4-5.  McNabb alleges that Senior Airman Ana Nunez-Fry, at unidentified times and in unidentified ways, "negligently induced  mental, emotional, physical anguish, and refrain of [sic] my initial actions of pursuance of prosecutorial assistance by acting in reliance to [sic] misrepresentation given to her by her assigned accountability [sic] and United States Air Force officials," "corroborated several [undescribed] acts of retaliatory measures while under direct order" that allegedly violated

---

[1] The Violence Against Women Act was formerly codified at 42 U.S.C. § 13981, and it authorized a federal civil cause of action arising out of a crime of violence motivated by gender.  In 2000, the United States Supreme Court held that statute to be unconstitutional because it exceeded Congress' power under the Commerce Clause.  *See United States v. Morrison*, 529 U.S. 598, 601 (2000).

unspecified "standard of and duty of care laws intended to deter the medical, emotional, and physical distress and anguish a victim deals with while a sexual assault investigation has commenced" and "negligently engaged in 'barracks gossip'" in violation of "Air Force Instruction 36-6001." *Id.* at 5.

McNabb alleges that Senior Airman Gregory Warren "negligently disclosed privacy information about my sexual assault on social medium forums" and "corroborated the actions of the afore-mentioned parties" by unidentified methods and at unidentified times and places, in alleged violation of "Air Force Instruction 36-6001." *Id.*

McNabb alleges that Senior Airman Karen Folles "negligently manifested a hostile military environment against my sexual assault investigation . . . by stating perjuries, while under oath, to the Honorable Magistrate Judge Karen B. Molzen" at an unidentified time and apparently during an unrelated "domestic violence trial," which "induced exacerbated levels of emotional distress" when the domestic-violence case was apparently dismissed[2]. *Id.*

For facts supporting Count II, McNabb states that her employment with CC&G LLC was "unlawfully terminated" because of the company's negligence in failing to properly investigate the "libelous information" associated with her sexual assault. This negligence lead to her termination in March 2012 and caused her to engage in "5 months of episodic alcohol abuse." *Id.* at 6. She states that Captain Heather Greatting, an Air Force official and "former contracting sponsor" "delegated unlawful termination of my employment with the Department of Defense." *Id.*

---

[2] It is unclear what part McNabb played in the apparently federal domestic-violence case or who were parties to that case. She describes herself only as a "witness."

The supporting facts for Count III are that McNabb got another job with Kemtah, who is contracted with the Department of Energy, in May 2012.  She lost that job after June 23, 2012, when she was "arrested and detained" by KAFB law-enforcement officials "for false allegations made against me by the United States Air Force in representation of my assailant and his third-party associates" while "attending a birthday event" at a house on base.  *Id.* at 7.

The Court is concerned with McNabb's characterizations of the June 23, 2012 incident.  The Court takes judicial notice of its own records, *see United States v. Ahidley*, 486 F.3d 1184, 1192 n. 5 (10th Cir. 2007) (stating, "we may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand"), because McNabb's misdemeanor prosecution was conducted in this Court.  *See United States v. McNabb*, Citation Nos. KAFB 3460088, 3460089 (D.N.M. Docket Date 10/3/2012).  The citing officer's sworn statement of probable cause states that the officer was dispatched to a house on Silverberg street on KAFB close to midnight because an "individual was banging on the door and screaming."  Residents who lived across the street from the Silverberg house said that the person had left the house on foot, and the officer went the same direction and saw McNabb "leaving a house party and walking" back toward the Silverberg house "with a beer in her hand."  According to the officer's statement, McNabb admitted that she had just been at the Silverberg house "and admitted to banging on the door and yelling" because "she was trying to get a male individual from that house, to confront him about an altercation in October 2011."  The officer also swore that McNabb admitted that she was asked to leave the Silverberg house, but she stated that "she wanted to make a scene."  Those sworn statements formed the basis of a misdemeanor charge for harassment.

While the officer was interviewing McNabb, the officer noticed that she seemed to be "holding something under her overcoat," and when she moved her arm, the officer "heard what sounded like glass shattering" on the ground between McNabb's feet. When the officer looked down, the officer saw what "appeared to be a glass pipe smoking device" that "had a strong odor of a controlled substance." According to the officer, McNabb stated she did not know what it was and that it was not hers. Those sworn statements formed the basis of a charge for "possession . . . of drug paraphernalia prohibited." The Court appointed counsel for McNabb at her request, and the United States and McNabb ultimately entered into a "negotiated" agreement whereby McNabb and the United States agreed that, if McNabb did not incur "any additional violations" for six months, completed ten hours of community service, and completed ten hours of counseling, the United States would not pursue further prosecution of the two misdemeanor charges. After McNabb successfully completed those requirements, on May 24, 2013, on the United States' motion, the Court dismissed the charges with prejudice. This negotiated agreement, therefore, represented a "deferred adjudication scheme," in which no finding of guilt is made, but the parties agree that the government's evidence substantiates the defendant's guilt but that the adjudication of guilt will be deferred – sometimes forever – if the defendant successfully completes the terms of the agreement. *See* CJS CRIMLAW § 558. "The purpose of [the scheme] to withhold judgment and ultimately to dismiss a charge is to provide an opportunity for rehabilitation and to spare the defendant, particularly a first offender, the burden of a criminal record." *Id.* McNabb's agreement to refrain from further criminal activity, perform community service, and obtain counseling in exchange for dismissal of the charges, then, was an admission that the government had sufficient evidence to prove that she had

committed the charged acts, and she may not now characterize the citing officer's sworn statements as "false allegations" made up by an officer allegedly acting in concert with her sexual-assault assailant when she has already fully benefitted from her negotiated plea.

Further, McNabb indicates that it was not until her June 23, 2012 citation that she first "reported my sexual assault incident to the [KAFB] law enforcement officials," and that the assault investigation was "initiated and commenced" at that time. *Id.* Thus, her assertions that she did not even report the assault to the citing officer until *after* she had been cited for harassment and possession of drug paraphernalia and that the Air Force immediately began an investigation into her allegations that she had been sexually assaulted are wholly inconsistent with her claim that she was charged only as a result of false statements because the officer conspired with her sexual-assault assailant. The Court warns McNabb that she signed her Complaint under penalty of perjury and that she risks prosecution if she makes false statements.

McNabb states that "several [unidentified] Air Force agencies [] administered to [sic] unlawful investigations into my privacy;" that she was "unable to obtain adequate legal services for the sexual assault case that was ongoing for 4 months due to the criminal allegations placed against me," and that because "the criminal case was simultaneously conducted with the sexual assault case," she "lost [her] second contracting position" at KAFB and her national security clearances were "suspended and then revoked." *Id.* She states that, after she lost her job, she was "forced to live in a shelter [provided by the veterans administration] for 6 months . . . throughout my sexual assault investigation" and that all of her "personal property was transferred [from her previous, off-base apartment] onto the base where it had been negligently stored," and that her social-security card and birth certificate were stolen "off of the installation."

*Id.* at 7, 8.  She states that she "suffered from medical privacy invasion," in an unidentified way by unidentified "Air Force agencies."  *Id.* at 7.

In support of her claims in Count III, McNabb also contends that the KAFB 377 "security forces" "alleged criminal misdemeanor offenses" against her and "failed to restrain [her sexual-assault] assailant" from harassing, slandering, and provoking her from July 12, 2012 through March 13, 2013 in unidentified ways.  *Id.* at 8.  She contends that the Air Force Office of Special Investigations "failed to commit to duty owed to a sexual assault victim" and negligently conducted the assault investigation for 3 months - from June-September 2012.  *Id.*  She alleges that the KAFB's "Staff Judge Advocacy . . . negligently reported libelous information to the Veterans Affairs Hospital while conducting [the] sexual assault investigation" which resulted in an "inaccurate medical diagnosis" that she is currently appealing.  *Id.*

McNabb states that she "filed an FTCA against the organization," but she does not indicate whether she has received a letter or ruling finally denying her administrative claim.  *Id.* at 9.  McNabb seeks $3,064,000 in damages.  *Id.*

**IV.  McNabb has failed to invoke the court's subject-matter jurisdiction or state a cognizable federal claim.**

"Federal courts are courts of limited jurisdiction, and the presumption is that they lack jurisdiction unless and until a plaintiff pleads sufficient facts to establish it." *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994).  "[T]he party pleading jurisdiction must allege in his pleading the facts essential to show jurisdiction."  *Id.* (internal quotation marks omitted).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  FED. R. CIV. P. 12(h)(3).

Neither the United States, its departments and agencies, nor its employees acting within their scope of employment may be sued without the United States' explicit waiver of sovereign immunity. A waiver of

> sovereign immunity must be strictly construed in favor of the sovereign and may not be extended beyond the explicit language of the statute. It long has been established, . . . that the United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain suit. A waiver of sovereign immunity cannot be implied, but must be explicitly expressed.
>
> \* \* \* \*
>
> The burden is on the [plaintiff] to find and prove an explicit waiver of sovereign immunity.

*Fostvedt v. United States*, 978 F.2d 1201, 1202-03 (10th Cir. 1992) (internal quotation marks and citations omitted).

McNabb is suing the United States Air Force only under 42 U.S.C. § 1983. *See* Compl. at 1. To invoke the Court's subject-matter jurisdiction under § 1983, a plaintiff must allege facts showing that "some person has deprived him of a federally protected right;" and "that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). McNabb alleges that the Air Force acted under color of state law because "it was acting under the scope of its employment within the state while executing a series of federal and civil investigations and within the statutes set within the Civil Rights Act of 1964[3]." *Id.* But the Air Force has no "scope of employment" - it is a department of the United States. And the fact that KAFB is located, and its officers and agents work, in New Mexico does

---

[3] The Civil Rights Act of 1964 prohibits discrimination on the basis of race, color, religion, sex or national origin. There are no allegations that the Air Force intentionally discriminated against McNabb on the basis of her sex.

11

not mean that the Air Force is acting "under color of state law." Federal governmental entities act "under color of federal, not state law." *Davis-Warren Auctioneers, J.V. v. F.D.I.C.*, 215 F.3d 1159, 1161 (10th Cir. 2000).

It has long been the law that § 1983 does not waive sovereign immunity for an action against a federal department like the Air Force. *See Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th Cir. 1997) (noting that § 1983 "applies to actions by state and local entities, not to the federal government" and dismissing plaintiff's § 1983 claims against the Secretary of the Department of the Air Force because his complaint "does not reflect any allegation . . . that his superiors at Kirtland Air Force Base were acting under color of state law"). McNabb has failed to state a cognizable claim against the Air Force for violation of § 1983. If McNabb is attempting to assert that the Air Force is liable under § 1983 for the alleged negligence of its officers or agents, § 1983 still does not apply. *See Kite v. Kelley*, 546 F.2d 334, 337 (10th Cir. 1976) ("Section 1983 has no application to federal officers acting pursuant to federal law.").

Perhaps, since she claims that Air Force officers, acting within the scope of their employment, negligently conducted criminal investigations and interfered with her employment contracts, defamed her, and wrongfully released information to the VA, McNabb is attempting to sue the Air Force under the Federal Tort Claims Act ("FTCA"). The FTCA provides the exclusive remedy for claims for monetary damages brought against federal employees who commit damaging negligent or wrongful acts while acting within the scope of their employment, even if a plaintiff fails to name the United States in her complaint. *See Pretlow v. Garrison*, No. 10–6206, 420 Fed. App'x 798, 802, 2011 WL 989849, *3 (10th Cir. March 22, 2011). The United States, however, is the only proper defendant in a suit brought under the FTCA. *See id.*

> The FTCA waives the United States' sovereign immunity when federal employees are negligent within the scope of their employment under circumstances in which private individuals would be liable. *See* 28 U.S.C. §§ 2674, 1346(b).

*Tew v. United States*, 86 F.3d 1003, 1004-05 (10th Cir. 1996). Although the FTCA supplies a limited waiver of the federal government's sovereign immunity from private suit, a plaintiff suing under the FTCA must comply with the statute's notice requirements, which are jurisdictional, cannot be waived, and must be strictly construed. *See Trentadue v. United States*, 397 F.3d 840, 852 (10th Cir. 2005). The FTCA requires complete exhaustion of administrative remedies before a plaintiff may file suit in federal court.

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). Although McNabb states that she filed a claim under the FTCA, she does not state when she filed it, whether the claim was finally denied, or if it has been more than six months since its filing. If McNabb has not received the final ruling, or more than six months have not passed since she filed her claim, she could not amend her complaint to substitute the United States as the defendant and assert jurisdiction under the FTCA because such a suit would be premature. *See McNeil v. United States*, 508 U.S. 106, 112-13 (1993); *Beals v. United States Dep't of Justice*, No. 11–4187, 460 Fed. App'x 773, 775, 2012 WL 362003, **2 (10th Cir. Feb. 6, 2012) ("The FTCA waives sovereign immunity only if 'the claimant shall have first presented

13

the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.'").

Further, there are substantive issues with attempting to bring McNabb's claims under the FTCA because the Act contains specific exceptions to the waiver of sovereign immunity that apply to her allegations.

> [T]he discretionary function exception provides that the FTCA's waiver of sovereign immunity does not apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government. . . ." 28 U.S.C. § 2680(a).

*Tew*, 86 F.3d at 1005.

> The discretionary function exception is designed to protect policymaking by the executive and legislative branches of government from judicial "second-guessing." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814, 104 S. Ct. 2755, 81 L. Ed. 2d 660 (1984). Thus, it "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Id.* at 808, 104 S. Ct. 2755. Among those activities encompassed by the discretionary function exception are "the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals." *Id.* at 813–14, 104 S. Ct. 2755.

*Garcia v. United States Air Force*, 533 F.3d 1170, 1176 (10th Cir. 2008). In addition,

> Section 2680(h) excepts claims arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

*Hobdy v. United States*, No. 91-3204, 968 F.2d 20, 1992 WL 149871 (10th Cir. June 26, 1992) (unpublished). McNabb's claims are like the plaintiff's FTCA claims for negligent investigation and defamation brought against the United States in *Hobdy*. In that case, Hobdy, the plaintiff,

worked for Tero Tek, a company that had a defense-department contract with the United States Army. *See* 1992 WL 149871 at *1.  In response to a

> report that Tero Tek employees were generating false reports, the Inspector General's Office requested that the Criminal Investigation Division (CID) investigate Tero Tek. . . . [during which time] plaintiff [was implicated] in the falsification of data.  The CID issued a report to the Directorate of Contracting (DOC), alleging that plaintiff falsified data.  As a result, DOC requested that plaintiff be removed from Tero Tek's work force.  Plaintiff was later decertified as an oil analyst.

*Id.*  Hobdy alleged in her FTCA complaint that

> 1. Employees and departments of the United States trespassed, invaded, and violated plaintiff's privacy by improperly using the CID investigative report (invasion of privacy claim);  2. The investigators failed to adequately and properly investigate the Inspector General's request for an investigation, failed to conduct a thorough and reasonable investigation, and negligently forwarded an erroneous and improper report to other agencies and branches of government (negligence claim).

*Id.*  The district court dismissed Hobdy's complaint for lack of subject-matter jurisdiction, concluding that

> the invasion of privacy claim was barred by § 2680(a) because it involved a discretionary function, and by § 2680(h) because it arose out of a claim for defamation or slander.  Further, the court held that the negligence claim was barred because it was, in essence, a claim for tortious interference with contract, tortious interference with prospective economic advantage, defamation, or slander, all of which are excepted from the FTCA by § 2680(h).

*Id.*  The Tenth Circuit affirmed the dismissal.

> > Deciding how to investigate, who to investigate, and how to present evidence to the proper authorities are classic examples of immunized prosecutorial conduct ... [s]uch conduct is exclusively within the province of the executive branch making it exactly the type of conduct the discretionary function exception was intended to protect from judicial branch interference.
>
> *Bradley v. United States*, 615 F. Supp. 206, 209 (E.D. Pa.1985), *aff'd sub nom. Pooler v. United States*, 787 F.2d 868 (3d Cir.), *cert. denied*, 479 U.S. 849 (1986).

> Thus, to the extent the invasion of privacy claim attacks the manner in which the investigation was conducted, the district court properly concluded the claim is barred by the discretionary function exception.
>
> Insofar as the negligence claim alleges that the investigation was negligently performed, it, too, is barred by the discretionary function exception. That the conduct was allegedly negligent is irrelevant because the discretionary function exception applies even when the discretionary acts were negligent. *Barnson v. United States*, 816 F.2d 549, 553 (10th Cir.), *cert. denied*, 484 U.S. 896 (1987).
>
> . . . .
>
> Insofar as the invasion of privacy and negligence claims allege that agents of the United States forwarded erroneous information to other agencies and branches of government, causing harm to plaintiff, the claims are barred by § 2680(h) if they arise out of libel and slander. Libel and slander are the equivalent of defamation. *Jimenez-Nieves v. United States*, 682 F.2d 1, 6 (1st Cir. 1982).
>
> An action for defamation involves a false and defamatory communication about another, an unprivileged publication to a third party, fault amounting to at least negligence, and harm. *Id*. Claims of injury to reputation caused by communication of defamatory statements to another "resound in the heartland of the tort of defamation." *Id.*

*Id.* at *2-*3. It seems clear that McNabb cannot bring her claims in Counts II and III against the United States based on the Air Force employees' negligent investigation, defamation, and interference with her employment contracts and loss of her security clearances allegedly resulting from negligent investigation and defamation.

And it is clear that McNabb cannot bring an FTCA claim under Count I against the United States based on her alleged sexual assault by Cameron in October 2011, or based on the other Airmen's acts associated with libel, slander, misrepresentation, deceit, or interference with her employment or security clearances. *See* Section 2680(h) (excepting from waiver any claims arising out of assault, battery, libel, slander, misrepresentation, deceit, or interference with contract rights). Further, Senior Airman Karen Folles has absolute immunity from a private suit

for damages for allegedly "stating perjuries" as a witness during a trial.  *See Briscoe v. LaHue*, 460 U.S. 325, 332-33 (1983) (setting out the long history of absolute immunity against suit for witnesses who testify at a trial under the common law, and holding that § 1983 did not abrogate that immunity).

Insofar as McNabb seeks to be awarded money for the officers' alleged violation of Air Force regulations, no cognizable claim exists under the FTCA.  *See Klepper v. City of Milford*, 825 F.2d 1440, 1448 (10th Cir.1987) ("[W]here a negligence claim is based on a violation of a federal statute or regulation, no claim will lie under the FTCA in the absence of some other duty under the applicable state law."); *United States v. Agronics Inc.*, 164 F.3d 1343, 1347 (10th Cir. 1999) (recognizing there can be no recovery for alleged violations of federal statutory or regulatory duties absent a "specific basis for concluding that similar conduct by private persons . . . would be actionable under state law") (internal quotation marks omitted)); *Mecca v. United States*, No. 09-1569, 389 Fed. App'x. 775, 778-779, 2010 WL 2893617, *2 (10th Cir.  July 26, 2010) (holding that claims for violations of army regulations "cannot impose liability under the FTCA").

The only claim left. therefore, is based on McNabb's allegation that KAFB's "377 Air Base Wing Chapel" negligently failed to secure her personal property in a storage unit and that her social security card and birth certificate were stolen.  *See* Compl. at 8.  The Court notes, however, that the only injury McNabb claims to have suffered from that alleged negligence is that she has a "potential identity theft risk."  A "potential risk" that has not occurred is not a "injury" to, or "loss of" property for which the United States may be held liable.  *See* 28 U.S.C. § 1346(b)(1) (listing claims for money damages "for injury or loss of property" as those that may

be alleged against the United States).  Although in her statement of background facts, McNabb contends that the Air Force is "currently in possession of my property," Compl. at 3, she does not support any Count with that statement or with any allegations that she has attempted to obtain her property but that the Chapel refuses to release it to her.

In short, McNabb's Complaint must be dismissed for the reasons stated above.  If McNabb believes that she can still state a cognizable claim against the United States under the FTCA by amending her complaint without committing perjury and without relying on the same allegations and claims that the Court has rejected, she may pay the filing fee and file a different complaint that cures the deficiencies noted above.

**IT IS ORDERED** that McNabb's motion to proceed IFP (Doc. 3) is DENIED and that her action is DISMISSED without prejudice for lack of subject-matter jurisdiction.

_____
**UNITED STATES DISTRICT JUDGE**